1   **WO**

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                       FOR THE DISTRICT OF ARIZONA

9

10  UNITED STATES OF AMERICA,        )
                                     )
11          Plaintiff,               )   No. CIV 11-474-TUC-CKJ
                                     )   No. CR 02-1016-TUC-JMR
12  vs.                              )   No. CR 08-123-TUC-JMR
                                     )
13  MIGUEL ANGEL ROSAS,              )        **ORDER**
                                     )
14          Defendant/Movant.        )
    ─────────────────────────────────)

15

16          Pending before the Court is Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set

17  Aside, or Correct Sentence by a Person in Federal Custody (CR 02-1016, Doc. 73; CR 08-

    123, Doc. 37; CV 11-474, Doc. 1).  A response and a reply have been filed.[1]
18

19

20  I. *Background*

21          On June 26, 2002, Movant Miguel Angel Rosas ("Rosas") was indicted on one count

22  of conspiracy to possess with intent to distribute marijuana and one count of possession with

    intent to distribute marijuana..  *See* No. CR 02-1016, Doc. 12..  Homero Torralba was
23
    retained to represent Rosas.  On January 23, 2003, Rosas entered a guilty plea to the
24

25

26  ─────────────────────────
            [1]The Court notes that, at least in part, the reply appears to have been prepared for
27  another case(s) and includes references to other proceedings.  For example, the reply refers
    to the entry of an *Alford* plea and arguments of the government that are not included in the
28  response filed in this case.

indictment without a plea agreement.[2] During the change of plea proceeding in CR 02-1016, the following occurred:

THE COURT:  Mr. Rosas, is your true and complete name Miguel Angel Rosas?

DEFENDANT ROSAS:  Yes.

THE COURT:  How old are you, sir?

DEFENDANT ROSAS:  23.

THE COURT:  How far did you go in school?

DEFENDANT ROSAS:  I'm still attending school.

THE COURT:  Where do you attend school?

DEFENDANT ROSAS:  Chaparral College.

THE COURT:  In the last 48 hours, have you had any drugs, prescription medications or alcoholic beverages?

DEFENDANT ROSAS:  No.

THE COURT:  Have you ever been treated for any mental or emotional disorder?

DEFENDANT ROSAS:  No.

THE COURT:  Mr. Torralba, do you believe your client is competent to enter a plea?

MR. TORRALBA:  Yes.

* * * * *

THE COURT:  Mr. Rosas, it's my understanding that you are going to enter a plea of guilty without a plea agreement at this time.

Is that correct, sir?

DEFENDANT ROSAS:  Yes.

THE COURT:  Has anyone made any promises to you to induce you to plead guilty here in today?

DEFENDANT ROSAS:  No.

THE COURT:  Has anyone forced you, threatened you or coerced you into entering

---

[2]The Court notes that Rosas' change of plea proceeding was conducted with another defendant.

- 2 -

1    this plea agreement?

2         DEFENDANT ROSAS:  No.

3         THE COURT:  Are you doing so voluntarily?

4         DEFENDANT ROSAS:  Yes.

5         THE COURT:  Are you doing so because you are guilty?

6         DEFENDANT ROSAS:  Yes.

7         THE COURT:  Are you doing so because you think it's in your best interest to plead
     guilty?

8         DEFENDANT ROSAS:  Yes.

9         THE COURT:  Mr. Torralba, I assume that there were plea negotiations that were
10   unsuccessful in this case?

11        MR. TORRALBA:  That did not result in a plea agreement.

12        THE COURT:  So there are no outstanding agreements, promises or understandings
     between the defendant and the government in this case?

13
          MR. TORRALBA:  Correct, Your Honor.
14
          THE COURT:  Mr. Rosas, the plea agreement contemplates that you will plead guilty
15   to Counts 1 and 2 of the indictment.

16        Each of these counts carries a maximum penalty of 40 years in prison, followed by
     a supervised release term of between four and five years, a maximum fine of two million
17   dollars and the court's mandatory special assessment of $100.

18        There is also a mandatory minimum term of incarceration of five years.

19        Do you understand those to be the maximum punishments you face, sir?

20        DEFENDANT ROSAS:  Yes.

21        THE COURT: Once you serve your initial period of incarceration, you will be subject
     to up to five years of supervised release which is like probation. If you violate those
22   conditions of release, you could be returned to prison for up to an additional five years.

23        Do you understand that, sir?

24        DEFENDANT ROSAS:  Yes.

25        THE COURT:  Do each of you, Mr. Garcia and Mr. Rosas, understand your case is
     subject to sentencing guidelines and the judge may depart from those guidelines in
26   sentencing you?

27        THE INTERPRETER:  Yes by both.

28
                                                - 3 -

1   * * * * * *

2   THE COURT:  . . . Mr. Rosas, if you were to commit another crime in the United
States, this conviction could be used against you to increase the sentence you are going to
3   receive and the amount of time you might have to serve before being eligible for release.

4   Do you understand that, sir?

5   DEFENDANT ROSAS:  Yes.

6   * * * * *

7   THE COURT: Mr. Rosas, are you a citizen of the United States?

8   DEFENDANT ROSAS: No.

9   THE COURT: Are you a lawful permanent resident?

10   DEFENDANT ROSAS: Yes.

11   THE COURT: Do you understand that this conviction could affect your continued
legal presence here in the United States?
12
DEFENDANT ROSAS: Yes.
13
THE COURT: Mr. Rosas, do you understand that in sentencing you on a conviction
14   for a felony drug offense District Judge Roll may order you denied eligibility for certain
federal benefits such as student loans, grants, contracts, food stamps or welfare benefits for
15   up to five years?

16   DEFENDANT ROSAS: Yes.

17   THE COURT: Do you understand that upon your third conviction for a felony drug
offense, whether in state or federal court, your ineligibility to those federal benefits is
18   mandated and permanent?

19   Do you understand that, sir?

20   DEFENDANT ROSAS: Yes.

21   THE COURT: Each of you as persons accused of a crime here in the United States
has certain constitutional rights I need to review with you before accepting your pleas of
22   guilty. One of those is the right to be represented by an attorney.

23   . . . Mr. Rosas, you have retained Mr. Torralba to represent you.

24   Both of these lawyers will be required to represent you at all stages of the case
including at trial and at sentencing if the verdict went against you.
25
Do each of you understand this?
26
THE INTERPRETER: Yes by both.
27

28   - 4 -

1    * * * * *

2          THE COURT:  Mr. Rosas, are you satisfied with the services of your lawyer?

3          DEFENDANT ROSAS:      Yes.

4          THE COURT:   You have the right to be tried by a jury of 12 persons randomly
     selected from the citizen of this district.
5
           You and your lawyer could help pick that jury and you could not be convicted unless
6    all 12 of those jurors were first convinced of your guilt.

7          Do each of you understand this?

8          THE INTERPRETER:  Yes by both.

9          THE COURT:  At trial the jurors would be instructed that you are presumed innocent
     of the charges against you.  The presumption of innocence means that you do not have to
10   prove that you are innocent in order to be found not guilty.

11         Do each of you understand this?

12         THE INTERPRETER:  Yes by both.

13         THE COURT:  The only thing that can overcome the presumption of innocence is if
     the government can produce sufficient evidence to prove your guilt beyond a reasonable
14   doubt.

15         The burden of proof is on the government throughout the case. The burden of proof
     never shifts to you to prove your innocence.  Do each of you understand this?
16
           THE INTERPRETER:  Yes by both.
17
           THE COURT:  Proof of guilt beyond a reasonable doubt means the government must
18   satisfy each and every juror almost to a certainty of each and every element of the charge
     against you before that juror would be justified in voting to find you guilty.
19
           Do each of you understand this?
20
           THE INTERPRETER:  Yes by both.
21
     * * * * *
22
           THE COURT:  Mr. Rosas, the elements that the government would have to prove to
23   prove that you possessed with intent to distribute marijuana is -- isn't 220 pounds almost right
     at 100 kilograms?
24
           MR. DUNCAN:  I expect there will be a reweighing of that between now and the
25   sentence.

26         THE COURT:  It's going to be either 50 to 100 or 100 to 1,000.  Is that the deal?

27         MR. TORRALBA:  Yes, Your Honor.

28
                                              - 5 -

1    MR. DUNCAN:  I think the court having advised the defendant of the maximum
penalties the record is good.

2

3    THE COURT:  Okay.

     MR. TORRALBA:  I agree.

4

5    THE COURT:  So what I advised him of was for the 100 to 1,000. The 40 years is the
100 to 1,000.

6    MR. DUNCAN:  Yes.

7    THE COURT:  Do each of you understand that once your plea of guilty is accepted,
you will not be -- well, yes, Mr. Rosas, do you understand that once your plea of guilty is

8    accepted, you will not be permitted to withdraw your plea of guilty?

9    DEFENDANT ROSAS:  Yes.

10   THE COURT:  Okay. I don't know what that record looks like, but 100 to 1,000
pounds is what I meant.

11

     Let me explain this to you a little bit, Mr. Rosas.

12

     The government has to prove each element of the charge against you beyond a

13   reasonable doubt. For possession with intent to distribute marijuana, what they need to prove
is that you were in possession of the marijuana here in the District of Arizona and that it was

14   your intent that this marijuana was to be delivered or distributed to people other than
yourself.

15

     So those three elements the government must prove beyond a reasonable doubt.

16

     In addition, in terms of what your sentence would be, the issue of whether it was --

17   the weight of the marijuana would have to be proven by the government beyond a reasonable
doubt and the potential sentence could be impacted based on that weight particularly if it's

18   over or under 100 kilograms.

19   That's, again, a burden that the government has to prove beyond a reasonable doubt.

20   Do you understand that, sir?

21   DEFENDANT ROSAS:  Yes.

22   THE COURT:  As to Count 1, it's the exact, same elements except one additional
element is that you entered into an agreement to accomplish this possession of this marijuana

23   with intent to distribute, that you entered into an agreement with someone other than yourself
and that person is known or unknown to the government or the grand jury.

24

     Do you understand that, sir?

25

     DEFENDANT ROSAS:  Yes.

26

     THE COURT:  In other words, that Count 1 charges you with a conspiracy and the

27   essential element of conspiracy is that you've entered into some agreement to conduct this

28
                                        - 6 -

1    criminal conduct with someone else.

2            Do you understand that, sir?

3            DEFENDANT ROSAS:  Yes.

4            THE COURT:  You also have the right to have witnesses who accuse you of a crime
     -- each of you has this right -- to have those witnesses testify here in court in your presence
5    and your attorneys could cross-examine those witnesses under oath.

6            Do each of you understand this?

7            THE INTERPRETER:  Yes by both.

8            THE COURT:  You also have the right to present your own case, call your own
     witnesses.  And if those witnesses did not want to appear voluntarily, they could be forced
9    to appear through the subpoena power of the court.

10           Do each of you understand this?

11           THE INTERPRETER:  Yes by both.

12           THE COURT: Unlike this proceeding where you are answering my questions, at trial
     each of you would have the right to remain silent.  You wouldn't have to testify or answer
13   anybody's questions.

14           Furthermore, the jury would be instructed they could not hold this against you in any
     way in determining the question of your guilt or innocence.
15

16           Do each of you understand this?

17           THE INTERPRETER:  Yes by both.

18           THE COURT:  If you did testify, the jurors would be instructed they must consider
     and evaluate your testimony applying the same standards they use for all witnesses in the
19   case.

20           Do each of you understand this?

21           THE INTERPRETER:  Yes by both.

22           THE COURT:  If you plead guilty here today, none of the things we talked about will
     happen.  There will be no jury, no trial and no witnesses. Instead, I'll ask you questions about
23   the offense to support your plea of guilty.

24           Mr. Rosas, in your case I'll make a recommendation to District Judge Roll to accept
     your plea of guilty and I'll advise you of the proposed sentencing date before Judge Roll.

25   * * * * *

26           Do each of you understand this?

27           THE INTERPRETER:  Yes by both.

28
                                                - 7 -

1     THE COURT:  Do each of you understand that once your plea of guilty is accepted, you will not be -- well, yes, Mr. Rosas, do you understand that once your plea of guilty is
2     accepted, you will not be permitted to withdraw your plea of guilty?

3     DEFENDANT ROSAS:  Yes.

4     * * * * *

5     THE COURT:  Mr. Estrada, are you satisfied your client understands his rights and the consequences of his change of plea?
6
      MR. ESTRADA:  Yes, Your Honor.
7
      THE COURT:  Mr. Torralba, are you satisfied as to your client?
8
      MR. TORRALBA:  Yes, Your Honor.
9
      * * * * *
10
      THE COURT:  Mr. Rosas, is it your desire to waive your right to a jury trial and these
11    other rights I explained to you here today and go forward with a plea of guilty?

12    DEFENDANT ROSAS:  Yes.

13    THE COURT:  I'm going to explain the charge against you in Count 1 of the
      indictment, sir.
14
      Count 1 of the indictment charges you with conspiracy to possess with intent to
15    distribute marijuana in the amount of approximately 220 pounds.

16    Specifically the indictment alleges that beginning on January 5 of 2002 and continuing
      up until January 16 of 2002, here in Arizona, that you combined and conspired and agreed
17    with persons unknown to the grand jury to possess with intent to distribute approximately
      220 pounds of marijuana in violation of federal law.
18
      Do you understand the charge against you in Count 1 of the indictment, sir?
19
      DEFENDANT ROSAS:  Yes.
20
      THE COURT:  As to that charge, do you wish to enter a plea of guilty or not guilty?
21
      DEFENDANT ROSAS:  Yes.
22
      THE COURT:  I need you to say either "guilty" or "not guilty," sir.
23
      DEFENDANT ROSAS:  Guilty.
24
      THE COURT:  Count 2 of the indictment charges you with possession with intent to
25    distribute approximately 220 pounds of marijuana.

26    Specifically the indictment in Count 2 alleges that on January 16 of 2002, near
      Tucson, you were knowingly and intentionally in possession of approximately 220 pounds
27    of marijuana.

28
                                        - 8 -

1  It was your intent that this marijuana was to be distributed to people other than yourself.

2  Do you understand the charge against you in Count 2 of the indictment, sir?

3  DEFENDANT ROSAS:  Yes.

4  THE COURT:  As to that charge, do you wish to enter a plea of guilty or not guilty?

5  DEFENDANT ROSAS:  Guilty.

6  THE COURT:  Mr. Duncan, can you provide the factual basis.

7  MR. DUNCAN:  At the time alleged in the indictment, here in Tucson, Arizona, an individual by the name of Donald William Sims met and negotiated with people either employed by or working for the Drug Enforcement Administration to sell them a quantity of marijuana and cocaine.

8

9

10  On January 16 the DEA met with Mr. Sims and another individual named Tatem to finalize the negotiations for the sale of the marijuana and the money, approximately $100,000, was displayed.  And the parties at that point agreed that transaction would take place at 2707 North Estrella here in Tucson, Arizona.

11

12

13  Mr. Rosas, on the 16th of January of last year, drove a vehicle to that address and at that point a quantity of marijuana weighing 220.6 pounds was loaded into that vehicle.

14  Mr. Rosas then drove the vehicle from the residence to a place about 3100 North Stone Avenue where the marijuana was to be transferred to the DEA. At that point an effort was made to place the people involved in this under arrest.

15

16  Mr. Rosas was not arrested until later, approximately May 28.  He was arrested, advised of his rights, agreed to waive his rights, and admitted to being involved in the marijuana transaction, and that the two other men, Sims and Tatem, were going to pay him $2,000 for transporting the marijuana from Estrella to the North Stone address where it was to be transferred or delivered to the DEA.

17

18

19  THE COURT: Mr. Rosas, did you hear the facts presented to the court by the attorney for the government?

20

21  DEFENDANT ROSAS:  Yes.

22  THE COURT:  Are those facts true to the best of your knowledge?

23  DEFENDANT ROSAS:  Yes.

24  THE COURT:  Let me ask you some questions about that.  On January 15 or 16 of 2002, did you enter into an agreement with either Donald Sims or Jesse Tatem to drive marijuana from this address on Estrella, 2707 North Estrella, to this shopping center on 3100 North Stone Avenue?

25

26  DEFENDANT ROSAS:  Yes.

27  THE COURT:  As part of that agreement, did they agree to pay you $2,000 to do that?

28

1      DEFENDANT ROSAS:  Yes.

2      THE COURT:  Did you understand that your purpose in driving it to the shopping center was that the marijuana was to be delivered to someone other than you and Mr. Tatem

3  and Mr. Sims?

4      DEFENDANT ROSAS:  Yes.

5      THE COURT:  The government says that -- you did in fact do this?  You did put marijuana into -- was it a truck or a car?  Let's see.

6      DEFENDANT ROSAS:  It was a truck.

7

8      THE COURT:  So you knew there was marijuana in that truck when you were driving it from Estrella up to the shopping center?

9      DEFENDANT ROSAS:  Yes.

10     THE COURT:  The government says they recovered 220 pounds of marijuana.

11     I guess you are going to argue about this at the time of sentencing about how much marijuana there was I guess.  Is that what is going to happen, Mr. Torralba?

12

13     MR. TORRALBA:  Actually, even at the 220, I think technically it's -- 222 pounds gets you to the 100.  We don't anticipate arguing.  Mr. Rosas is -- wasn't sure of how much weight was in the vehicle, but he's willing to accept the government's weight.

14

15     And I would just want to make one point clear while I have the court's attention and that is he didn't load it.  He was just the driver.

16     THE COURT:  Is that correct, Mr. Rosas?

17     DEFENDANT ROSAS:  Yes.

18     THE COURT:  So the defendant is willing to concede that there was 220 pounds recovered in the truck at this time?

19

20     MR. TORRALBA:  Yes, Your Honor.

21     THE COURT:  Is there anything the government would like to add to the factual basis?

22     MR. DUNCAN:  No, Your Honor.

23  * * * * *

24     THE COURT:  Mr. Torralba, as to Mr. Rosas, is there any legal reason why the plea should not be accepted?

25     MR. TORRALBA:  None, Your Honor.

26     THE COURT:   . . .  The court finds defendant Miguel Angel Rosas guilty of conspiracy to possess with intent to distribute marijuana and possession with intent to

27

28                                      - 10 -

1    distribute marijuana in violation of Title 21, United States Code, Sections 841 and 846.

2         Each of these cases the court finds there's a factual basis for the pleas.

3         The pleas of guilty are entered into knowingly, intelligently and voluntarily; free of
     any threats, force or duress; free of any promises other than those contained in the written
4    plea  agreement.

5         With regard to Mr. Rosas, it's ordered that these findings and recommendations are
     referred to District Judge Roll for his consideration.
6
          Defendant Rosas has 10 days to file written objections to these findings and
7    recommendations.

8    CR 02-1016, COP TR 1/23/03 (Doc. 38), pp. 5-6, 9-26.  On February 21, 2003, the district

9    court adopted the Report and Recommendation of the magistrate judge finding that the plea

10   was knowing, intelligent, and voluntary.

11        On March 21, 2003, the pretrial officer filed a Petition for Revocation/Amendment

12   of Release Conditions in CR 02-1016 based on Rosas' failure to appear for sentencing.  *Id.*,

13   Doc. 35.   On January 30, 2008, Rosas was indicted on one count of failure to appear.  *See*

14   CR 08-123, Doc. 1.  Rosas retained Stanton Bloom to represent him.

15        On April 15, 2008, Rosas pleaded guilty to the indictment in CR 08-123 without a

16   plea agreement.  A review of the transcript indicates that Rosas understood there was no

17   agreement with the government, that no one had forced, threatened, or coerced Rosas into

18   pleading guilty, that Rosas stated he was voluntarily pleading guilty and because he was

19   guilty, and that no promises had been made to Rosas.  CR 08-123, TR 4/15/08 (Doc. 39), p.

20   5. The review further reveals that the magistrate judge advised Rosas of the sentencing range

21   and consequences, the applicability of the Sentencing Guidelines, the discretion of the

22   sentencing judge, and Rosas' constitutional rights.  *Id.* at 6-9. .Moreover, Rosas stated that

23   he was satisfied with the services of his attorney.  *Id.* at 7.  The transcript also indicates that

24   a factual basis was provided to the court, *id.* at 10-14.

25        On December 15, 2008, all matters proceeded to sentencing before the Hon. John M.

26   Roll.  Rosas was sentenced to 53 months in prison followed by five years on supervised

27   release for the drug convictions. CR 02-1016, Doc. 55.  He was also sentenced to 10 months

28

1   in prison for his failure to appear to run consecutive to his sentence on the drug convictions.

2   CR 08-123, Docs. 24 and 27.

3   Rosas filed a direct appeal from both convictions.  On September 8, 2010, the Ninth

4   Circuit Court of Appeals affirmed.  CR 02-1016, Doc. 72; CR 08-123, Doc. 36.

5   On August 2, 2011, Rosas filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set

6   Aside, or Correct Sentence by a Person in Federal Custody (CR 02-1016, Doc. 73; CR 08-

7   123, Doc. 37; CV 11-474, Doc. 1).

8

9   II.  *Section 2255 Motion*

10   In his § 2255 Motion, Rosas alleges six grounds for relief.  In Ground One, he alleges

11   that he was denied the effective assistance of counsel where counsel failed to thoroughly

12   investigate the case, interrogate witnesses, move to suppress evidence, and to apprise Rosas

13   of substantive rights and potential defenses.  In Ground Two, Rosas alleges that counsel was

14   ineffective for failing to file a petition for certiorari, failing to invoke his speedy trial rights,

15   failing to request production of exculpatory evidence, falsely inducing Rosas to enter into a

16   plea agreement, and by failing to submit evidence to support a downward sentencing

17   adjustment.  In Ground Three, Rosas alleges that the District Court failed to advise Rosas of

18   his Fifth and Sixth Amendment trial rights, which rendered his guilty plea unknowing and

19   involuntary.  Rosas further argues that his waiver of the right to appeal was invalid.  In

20   Ground Four, Rosas alleges that the indictment was defective in violation of his Fifth and

21   Sixth Amendment rights where it failed to provide fair notice of the type and amount of

22   drugs at issue.  In Ground Five, Rosas alleges that he was improperly denied a role

23   adjustment by the Court under the Sentencing Guidelines.  In Ground Six, Rosas alleges that

24   his status as an illegal alien entitled him to a downward adjustment.

25   The government has filed a response and Rosas has filed a reply.

26

27

28

III.   *Ineffective Assistance of Counsel*

To prevail on a claim of ineffective assistance of counsel, Rosas must satisfy a two prong test, demonstrating:   (1) deficient performance, such that counsel's actions were outside the wide range of professionally competent assistance, and (2) that Rosas was prejudiced by reason of counsel's actions.  *Strickland v. Washington*, 466 U.S. 668, 686-90, 104 S.Ct. 2052, 2064-66, 80 L.Ed.2d 674 (1984).   "Failure to satisfy either prong of the Strickland test obviates the need to consider the other."  *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002).  "A claim of ineffective assistance used to attack the validity of a guilty plea may be sustained where the petitioner establishes that the ineffective performance 'affected the outcome of the plea process . . . [such] that absent the erroneous advice, [he] would have insisted on going to trial.'"  *United States v. Baramdyka*, 95 F.3d 840, 844 (9th Cir. 1996), *quoting Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

However, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [deficient]."  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also United States v. Signori*, 844 F.2d 635, 638 (9th Cir. 1988) ("A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of his guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases.").  Indeed, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  *Carrera v. Ayers*, — F.3d —, 2011 WL 4552468 (9th

1  Cir. 10/4/11), *quoting Strickland*, 466 U.S. at 689; *Padilla v. Kentucky*, — U.S. —, 130 S.Ct.

2  1473, 176 L.Ed.2d 284 (2010).

3       Moreover, where a claim involves alleged occurrences outside the record, a hearing

4  is not required if the allegations "viewed against the record, either fail to state a claim for

5  relief or are 'so palpably incredible or patently frivolous as to warrant summary dismissal.'"

6  *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir.1985), *quoting United States v.*

7  *Schaflander*, 743 F.2d 714, 717 (9th Cir.1984).   Where the allegations of a petitioner

8  contradict statements made in court, credibility must be assessed.  *Shah v. United States*, 878

9  F.2d 1156, 1159 (9th Cir. 1989).  An evidentiary hearing is not required where the issue of

10 credibility may be "conclusively decided on the basis of documentary testimony and

11 evidence in the record." *Watts v. United States*, 841 F.2d 275, 277 (9th Cir.1988).[3]  Also,

12 courts may expand the record with other documentary evidence, use their own notes and

13 recollections, and use common sense.  *Shah*, 878 F.2d at 1159; *see also United States v.*

14 *Espinoza*, 866 F.2d 1067, 1070 (9th Cir.1988).

15

16 A.  *Ground One*

17      Rosas asserts that he was denied the effective assistance of counsel where counsel

18 failed to thoroughly investigate the case, interrogate witnesses, move to suppress evidence,

19 and to apprise Rosas of substantive rights and potential defenses.  However, in making these

20 assertions, Rosas has not provided any specific details as to some of these claims.  For

21 example, he does not assert what evidence further investigation or witness statements may

22 have provided.  Similarly, Rosas does not indicate what rights or potential defenses of which

23

24

25      [3]However, a hearing may be required "in spite of 'the barrier of the plea or sentencing

26 procedure record [which], although imposing, is not invariably insurmountable.'" *Shah*, 878
   F.2d at 1158, *quoting Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136

27 (1977).

28                                         - 14 -

counsel did not apprise Rosas.[4]   Rosas has clarified in his reply, however, that a motion to suppress should have been filed on the basis of entrapment and a pretextual stop.  *See* CV 11-474, Doc. 8, p. 8.

Nonetheless, Rosas' claims of ineffective assistance of counsel relating to pre-plea matters that are unrelated to the plea itself do not survive a guilty plea under *Tollett*.  *See, e.g., Moran v. Godinez*, 57 F.3d 690, 700 (9th Cir.1994), *overruled on other grounds* ("[Petitioner's] contention that his attorneys were ineffective because they failed to attempt to prevent the use of his confession is the assertion of an alleged pre-plea constitutional violation[,] ... [which the court] will not consider ... in this habeas appeal."); *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir.1992) (per curiam) (defendant's guilty plea waived his pre-plea ineffective assistance of counsel claim); *United States v. Ramos*, 275 Fed.Appx. 581, 582-83 (9th Cir.2008) (by pleading guilty, defendant waived his claim that trial counsel rendered ineffective assistance on his suppression motion under *Tollett*); *United States v. Friedlander*, 217 Fed.Appx. 664, 665 (9th Cir.2007) (when defendant pled guilty, he waived pre-plea claim that his trial counsel was ineffective in her preparation and submission of two suppression motions); *United States v. Torres*, 129 F.3d 710, 715-16 (2d Cir.1997) (declining, under *Tollett*, to address whether defense counsel "was constitutionally ineffective by failing to interview and call certain witnesses at a pretrial suppression hearing").

The Court notes that Rosas has conclusorily asserted that, had counsel provided effective assistance, Rosas would either have been exonerated or facts establishing simple possession would have been discovered.  However, Rosas admitted during the change of plea proceedings that he made an agreement with others to transport approximately 220 pounds of marijuana, knew the marijuana was placed in the truck, and knew that the marijuana was

---

[4]The Court notes that the transcripts of the change of plea proceedings shows that Rosas was fully apprised of his rights.

to be delivered to someone else.  Indeed, "nothing in the record impeaches [Rosas'] plea or suggests that his admissions in open court were anything but the truth."  *Brady v. United States*, 397 U.S. 742, 758, 90 S.Ct. 1463, 1474, 25 L.Ed.2d 747 (1970).

Rosas has not shown that the advice of counsel, based on these alleged deficiencies, was not within the range of competence demanded of attorneys in criminal cases.  The Court finds Rosas has failed to show that he has been prejudiced by the alleged deficiencies.  The Court will deny relief on these claims.

B. *Ground Two*

In Ground Two, Rosas alleges that counsel was ineffective for failing to file a petition for certiorari, failing to invoke his speedy trial rights, failing to request production of exculpatory evidence, falsely inducing Rosas to enter into a plea agreement, and by failing to submit evidence to support a downward sentencing adjustment.

The Court does not find that the failure of counsel to file a petition for writ of certiorari was deficient.  *See United States v. Arechiga-Ramirez*, 2010 WL 764045 (9th Cir. February 16, 2010) (unpublished) (because there is no right to counsel in the filing of writs of certiorari, counsel cannot be ineffective in failing to file one).  Moreover, Rosas has not shown that he was prejudiced by this alleged deficiency.  The granting of review on a writ of certiorari is within judicial discretion and is normally considered when there is a conflict among circuits, when a state court of last resort renders a decision that is in conflict with a decision of another state's court of last resort, or when a state or federal appeals court has decided an important federal question that conflicts with Supreme Court law.  Rules of the Supreme Court Rule 10.  Rosas has not shown that there is a basis for a writ of certiorari to be granted in this case.  *See e.g., Langdon v. United States*, 8:02-cr-122-T-24EAJ, 8:06-cv-959-T-24EAJ, 2007 WL 656460 (M.D.Fla. 2007), *citing Salcedo v. United States,* 98 CIV 7638 (DLC), 1999 WL 335835 at *4 (S.D.N.Y., May 25, 1999) (finding that, even if appellate counsel did not consult with the defendant regarding his appeal or promptly notify

- 16 -

1  him of the affirmance of his conviction, the defendant had failed to show by any reasonable

2  probability that any petition for a writ of certiorari would have succeeded).  Indeed, Rosas

3  has failed to show that he was prejudiced by the deficient conduct because he could request

4  the Ninth Circuit recall the mandate and reissue the opinion.  *See United States v. Mattarolo*,

5  209 F.3d 1153, 1155 (9th Cir.2000).

6          Additionally, Rosas has failed to show that he has been prejudiced by any alleged

7  deficiency of counsel failing to invoke his speedy trial rights and failing to request

8  production of exculpatory evidence.[5]  Rosas has not shown that the Speedy Trial Act, 18

9  U.S.C. § 3161, was violated, has not alleged what exculpatory evidence may have been

10  discoverable, and has not shown that advice from counsel based on these alleged deficiencies

11  was not within the range of competence demanded of attorneys in criminal cases.

12          Rosas also claims that counsel falsely induced Rosas to enter into a plea agreement.

13  Although Rosas did not enter into a plea agreement, he did enter a plea of guilty.  A review

14  of the change of plea transcripts indicates that Rosas entered into the guilty pleas knowingly

15  and voluntarily, without any outside threats or promises, and with knowledge of the

16  sentencing consequences.  An avowal in a court of law that a plea is being entered into

17  voluntarily, and without any outside promises or threats, carries a strong presumption of

18  veracity in subsequent pleadings attacking a plea.  *See United States v. Ross*, 511 F.3d 1233,

19  1236 (9th Cir. 2008).   Rosas' "[s]olemn declarations in open court carry a strong

20  presumption of verity."   *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir. 1987).

21  Rosas' assertions in his reply that counsel informed him that he would receive a life sentence

22

23          [5]Indeed, the Ninth Circuit has stated that a petitioner's "plea forecloses him from

24  collaterally attacking alleged speedy trial violations that occurred more than ten years before
   he plead. [*Tollett*, 411 U.S. at 267]; [*Bohn*, 956 F.2d at 209].  Similarly, his plea forecloses

25  his claim of pre-plea ineffective assistance of counsel, which is unrelated to the plea itself.
   See [*Moran*, 57 F.3d at 700]."  *Nigro v. Evans*, 399 Fed.Appx. 279, 280 (9th Cir. 2010).

26

27

28                                               - 17 -

if found guilty at trial, but would receive reductions for minor/minimal role and acceptance of responsibility, is simply refuted by Rosas' statements during the change of plea proceedings (e.g., Rosas stated he understood sentence to be determined by the sentencing judge, plea of guilty was not the result of threats or promises, and that he was pleased with the services of his attorney).  The Court finds Rosas has failed to show that counsel provided deficient assistance and has failed to show that he was prejudiced by the alleged deficiency.

Rosas also asserts that counsel was ineffective by failing to submit evidence to support a downward sentencing adjustment based on insufficient evidence.  However, Rosas' statements during the plea proceedings established sufficient evidence to support the convictions.  Again, Rosas' "[s]olemn declarations in open court carry a strong presumption of verity."  *Id.*  Moreover, Rosas has not stated how the evidence was insufficient.  Rather, the factual basis provided at the change of plea proceedings established Rosas' guilt. Moreover, defense counsel filed an objection to the pre-sentence report and a sentencing memorandum that discussed Rosas' role in and the circumstances of the offenses, Rosas' history and characteristics, and mitigating factors.  CR 02-1016, Doc. 50; CR 08-123, Doc. 18; *see also* CR 02-1016, Sentencing TR 12/15/08 (Doc. 66).  The Court finds Rosas has failed to show that counsel's performance was deficient and has failed to show that he was prejudiced by the alleged deficiency as to this claim.

C.  *Ground Three*

Rosas alleges that the District Court failed to advise Rosas of his Fifth and Sixth Amendment trial rights and failed to advise Rosas pursuant to Fed.R.Crim.P. 11, which rendered his guilty plea unknowing and involuntary.  However, a review of the change of plea transcripts shows that the magistrate judge fully advised Rosas of his rights and the consequences of his guilty pleas.  A plea colloquy that satisfies "Rule 11's requirements will lead to a plea being considered knowing and voluntary, unless some misrepresentation or gross mischaracterization by counsel has tainted the plea."  *United States v. Jeronimo*, 398 F.3d 1149,

1157 n. 5 (9th Cir. 2005), *overruled on other grounds*. The Court finds Rosas is not entitled to relief on this claim.

Rosas also argues that his waiver of the right to appeal was invalid. However, the record does not show that Rosas waived his right to appeal – indeed, Rosas appealed his convictions and sentences. The Court finds Rosas is not entitled to relief on this claim.

D. *Ground Four*

Rosas alleges that the indictment was defective in violation of his Fifth and Sixth Amendment rights where it failed to provide fair notice of the type and amount of drugs at issue. As asserted by Rosas, a claim that an indictment fails to state an offense is a jurisdictional defect that is not waived by a guilty plea. *United States v. Caperell*, 938 F.2d 975, 977 (9th Cir. 1991). However, the indictment in CR 02-1016 charged conspiracy to possess with intent to distribute approximately 220 pounds of marijuana, as well as possession with intent to distribute approximately 220 pounds of marijuana. The indictment also identified the statutes Rosas was alleged to have violated.

Additionally, it appears that Rosas is also seeking to attacking the constitutionality of the applicable statutes in his reply. However, his attempt to raise a new claim in the reply is improper. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). Moreover, this new allegation was not filed within the one-year limitation period as set forth in 28 U.S.C. § 2255(f).[6] The Court finds Rosas is not entitled to relief on these claims.

E. *Ground Five*

Rosas alleges that he was improperly denied a role adjustment by the Court under the Sentencing Guidelines. However, counsel argued that the evidence established that Rosas

---

[6]The Court notes that the mandate was issued in this case on September 8, 2010. CR 02-1016, Doc. 72. Rosas' reply was signed on February 9, 2012, and filed on February 13, 2012.

1   was only a minimum or minor player in the activities.  CR 02-1016, Doc. 50, p. 2; *see also*

2   CR 08-123, Doc. 18.  Moreover, the Ninth Circuit Court of Appeals determined that the

3   sentencing court was not clearly erroneous in finding Rosas was not a minor participant.  *See*

4   CR 02-1016, Doc. 72.  "[Rosas] raised this precise claim in his direct appeal, and the court

5   expressly rejected it.  Therefore this claim cannot be the basis of a § 2255 motion."  *United*

6   *States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985).  The Court finds Rosas is not entitled to

7   relief on this claim.

8

9   F.  *Ground Six*

10          Rosas alleges that his status as an alien entitled him to a downward adjustment.

11   However, the sentencing judge was not required to adjust the sentence on such a basis.  *See*

12   *Lizarraga-Lopez v. United States*, 89 F.Supp.2d 1166, 1170 (S.D.Cal. 2000) (concluding that

13   defendant's "status as a deportable alien was squarely within the 'heartland' of the

14   Sentencing Guidelines and was specifically accounted for in the early release statute");

15   *United States v. Martinez-Villegas*, 993 F.Supp. 766, 781 (C.D.Cal. 1998) (denying

16   downward departure based on deportable alien status and noting that "the Ninth Circuit has

17   shown a reluctance to allow deportability status as a basis for a downward departure");

18   *United States v. Davoudi*, 172 F.3d 1130, 1133-34 (9th Cir. 1999) (upholding district court's

19   discretionary decision not to depart downward based on deportable alien status); *McLean v.*

20   *Crabtree*, 173 F.3d 1176, 1185- 86 (9th Cir. 1999) (BOP's practice of "excluding prisoners

21   with detainers from participating in community-based treatment programs, and consequently

22   from sentence reduction eligibility" does not violate equal protection because it is "rationally

23   related to the BOP's legitimate interest in preventing prisoners from fleeing detainers or

24   participating in community treatment programs.").  The Court finds Rosas is not entitled to

25   relief based on this claim.

26

27

28                                          - 20 -

1  *Certificate of Appealability ("COA")*

2      Rule 11(a), Rules Governing Section 2255 Proceedings, requires that in habeas cases

3  the "district court must issue or deny a certificate of appealability when it enters a final order

4  adverse to the applicant."  Such certificates are required in cases concerning detention arising

5  "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking

6  a federal criminal judgment or sentence.  28 U.S.C. § 2253(c)(1).  Here, the Motion is

7  brought pursuant to 28 U.S.C. § 2255.  This Court must determine, therefore, if a COA shall

8  issue.

9      The standard for issuing a COA is whether the applicant has "made a substantial

10 showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district

11 court has rejected the constitutional claims on the merits, the showing required to satisfy §

12 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would

13 find the district court's assessment of the constitutional claims debatable or wrong." *Slack*

14 *v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).  "When the district

15 court denies a habeas petition on procedural grounds without reaching the prisoner's

16 underlying constitutional claim, a COA should issue when the prisoner shows, at least, that

17 jurists of reason would find it debatable whether the petition states a valid claim of the denial

18 of a constitutional right and that jurists of reason would find it debatable whether the district

19 court was correct in its procedural ruling."  *Id*.  In the certificate, the Court must indicate

20 which specific issues satisfy the showing.  *See* 28 U.S.C. § 2253(c)(3).

21      As to Rosas' claims that counsel were ineffective relating to pre-plea matters that are

22 unrelated to the plea itself, the Court determined that Rosas' claims do not survive a guilty

23 plea under *Tollett*.  The Court finds jurists of reason would find it debatable whether the

24 Motion stated a valid claim.  *See e.g. Hector v. Poulos*, 648 F.Supp.2d 1194 (C.D.Cal. 2009)

25 (gathering cases to show "there is some uncertainty whether a claim of ineffective assistance

26 of counsel relating to a pre-plea motion to suppress evidence survives a guilty plea").  The

27 Court finds a Certificate of Appealability shall issue as to these claims.

28

1    As to the remaining issues raised in the Motion, the Court finds that jurists of reason
2 would not find it debatable whether the Motion stated a valid claim of the denial of a
3 constitutional right and the Court finds that jurists of reason would not find it debatable
4 whether the district court was correct in its procedural ruling.  A COA shall not issue as to
5 the remaining claims.
6    Any further request for a COA must be addressed to the Court of Appeals.  *See* Fed.
7 R.App. P. 22(b); Ninth Circuit R. 22-1.
8    Accordingly, IT IS ORDERED:
9    1.    Rosas' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct
10 Sentence by a Person in Federal Custody (CR 02-1016, Doc. 73; CR 08-123, Doc. 37; CV
11 11-474, Doc. 1) is DENIED;
12    2.    Cause No. CV 11-474 is DISMISSED
13    3.    The Clerk of the Court shall enter judgment and shall then close its file in
14 Cause No. CV 11-474.
15    4.    A Certificate of Appealability shall issue as to whether Rosas' claims that
16 counsel were ineffective relating to pre-plea matters that are unrelated to the plea itself
17 survived Rosas' guilty plea under *Tollett*.
18    DATED this 9th day of March, 2012.

_____
Cindy K. Jorgenson
United States District Judge

- 22 -